Case: 2:21-cr-00044-DLB-CJS  Doc #: 64  Filed: 01/04/22  Page: 1 of 8 - Page ID#: 134



Eastern District of Kentucky
**FILED**
JAN - 4 2022
AT COVINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## NORTHERN DIVISION
## COVINGTON

**CRIMINAL ACTION NO. 21-44-S-DLB-2**

**UNITED STATES OF AMERICA**           **PLAINTIFF**

V.          **PLEA AGREEMENT**

**THOMAS E. POWERS**           **DEFENDANT**

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Count 1 of the Superseding Indictment, charging a violation of 21 U.S.C. § 846 (conspiracy to distribute controlled substances, including 50 grams or more of methamphetamine and 400 grams or more of fentanyl) and Count 4 of the Superseding Indictment, charging a violation of 21 U.S.C. § 841(a)(1) (possession of 50 grams or more of methamphetamine with intent to distribute). The United States will move to dismiss the original Indictment and remaining counts of the Superseding Indictment applicable to the Defendant at sentencing.

2. The essential elements of Count 1 are:

(a) That the Defendant conspired with other individuals to knowingly and intentionally distribute 50 grams or more of methamphetamine, a Schedule II controlled substance; and

(b) That the Defendant knowingly and voluntarily joined in the conspiracy.

1

3. The essential elements of Count 4 are:

(a) That the Defendant knowingly and unlawfully possessed 50 grams or more of methamphetamine, a Schedule II controlled substance; and

(b) That the Defendant intended to distribute the substance.

or

(a) That the crime of possession of a controlled substance with intent to distribute was committed;

(b) That the Defendant helped to commit the crime;

(c) That the Defendant intended to help commit the crime; and

(d) That the crime involved 50 grams or more of methamphetamine, a Schedule II controlled substance.

4. The United States could prove the following facts that establish the essential elements of the offenses beyond a reasonable doubt, and the Defendant admits these facts:

(a) During a period beginning on or about August 1, 2020 and ending on or about June 14, 2021, the Defendant conspired with Allie Skirvin, Travis Lelesch, and others to distribute 50 grams or more of methamphetamine. Lelesch resided with Skirvin and distributed methamphetamine and fentanyl supplied through the conspiracy. The Defendant distributed methamphetamine supplied through the conspiracy. He also knowingly transported Skirvin to and from drug transactions and accompanied Skirvin while she was obtaining and distributing controlled substances.

(b) ATF used an undercover officer to conduct a controlled buy of slightly over a gram of a mixture containing crystal methamphetamine from Lelesch on August 20, 2020 at the residence he shared with Skirvin in Cincinnati.

(c) On May 23, 2021, Ft. Thomas Police conducted a traffic stop on a vehicle in Campbell County, Kentucky. Skirvin was the passenger in the vehicle. Agents observed drug paraphernalia in the vehicle and had a drug dog check it. The dog alerted on the passenger front door. Officers located slightly over 4 grams of actual methamphetamine as well as digital scales in that area of the car. They

arrested Skirvin and found a loaded Taurus semi-automatic 9-millimeter pistol with serial number ABD441865 tucked into her waistband.

(d) Agents subsequently interviewed Skirvin and she admitted to selling 3-6 ounces of methamphetamine a day and 3-4 ounces of fentanyl a week for the previous 9 months. She estimated that she had directly, and indirectly through others, distributed a total of approximately 30-40 pounds of methamphetamine and 15-20 pounds of fentanyl. She showed agents text messages confirming the source of supply and her active distribution. Based on her interviews, the conspiracy went back to at least August 1, 2020.

(e) Skirvin was released on bond. She provided agents with the user ID and password for the app she used to communicate with her current primary source of supply. As agents monitored Skirvin's communications, they determined that Skirvin was continuing to engage in drug trafficking.

(f) Based on these communications, agents conducted surveillance on June 14, 2021 in Kentucky and Ohio and observed activity consistent with the Defendant and Skirvin meeting a source of supply in Ohio and delivering controlled substances to other individuals. Agents followed the Defendant and Skirvin to a location in Newport, Kentucky, and stopped them. Agents recovered over 54.1 grams of actual methamphetamine on June 14, 2021 in Newport from the vehicle that the Defendant and Skirvin had occupied, as well as a small amount of methamphetamine and fentanyl from the Defendant.

(g) The Defendant and Skirvin cooperated. They were interviewed and admitted to obtaining approximately four ounces of methamphetamine and a quarter-ounce of fentanyl from the previously identified source of supply on June 14, 2021 and distributing it during the transaction observed by agents. The Defendant admitted to obtaining at least 3.5 grams of methamphetamine from Skirvin approximately every other day for approximately eighteen months. He used some of this methamphetamine and distributed some of it.

(h) The Defendant agrees that his relevant conduct for all controlled substances involved in the conspiracy was at least 3,000 but less than 10,000 kilograms in converted drug weight.

5. The statutory punishment for Counts 1 and 4 is not less than 10 years and not more than life imprisonment, a fine of not more than $10,000,000, and at least 5 years

supervised release. A mandatory special assessment of $100 applies to each count, and the Defendant will pay this assessment as directed by the Court.

6. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations as long as they are not inconsistent with this agreement. This recommendation does not bind the Court.

    (a) United States Sentencing Guidelines (U.S.S.G.), November 1, 2018, manual, will determine the Defendant's guideline range.

    (b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes the conduct described in Paragraph 4 of this agreement.

    (c) Pursuant to U.S.S.G. § 2D1.1(c)(4), the base offense level for Counts 1 and 4 is 32 because the offense involved at least 3,000 but less than 10,000 kilograms of converted drug weight.

    (d) Pursuant to U.S.S.G. § 3B1.2(b), the offense level is decreased by two for a minor role in the offense. Pursuant to U.S.S.G. § 2D1.1(a)(5), decrease the offense level by two additional levels since the base offense level based on drug amount is 32.

    (e) Pursuant to U.S.S.G. § 3E1.1, decrease the offense level for Count 1 by two levels for the Defendant's acceptance of responsibility. Since the offense level determined prior to this two-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by one additional level based on the Defendant's timely notice of intent to plead guilty. These reductions will not apply if the Defendant commits another crime, obstructs justice, violates this agreement, or violates a court order.

7. No agreement exists regarding the Defendant's criminal history category. The Defendant reserves the right to argue for variances below the applicable advisory sentencing guidelines range. The United States is free to oppose these requests.

8. The Defendant will not file a departure motion pursuant to U.S.S.G. Chapter 5, Parts H or K or request a further role reduction.

9. If the Defendant meets the criteria for the statutory safety valve pursuant to 18 U.S.C. § 3553(f), but does not meet the criteria for the safety valve pursuant to U.S.S.G. § 5C1.2, the United States will move for a two-level downward variance to bring the advisory guideline calculation in line with the statutory safety valve. The Defendant must waive his right to seek a later reduction in the event Section 5C1.2 is subsequently amended.

10. The Defendant will forfeit to the United States all interest in the property listed in the forfeiture allegation of the Indictment and will execute any documents necessary for this forfeiture. The Defendant agrees that this property is subject to forfeiture because a nexus exists between the property and the offenses, as set out in the forfeiture allegation of the Indictment.

11. The Defendant waives the right to appeal the guilty plea, conviction, and any sentence within or below the advisory guideline range adopted by the Court at sentencing, including any applicable modifications for a mandatory minimum sentence. The Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence except for claims of ineffective assistance of counsel. In return, the United States will not recommend a sentence above the middle of the advisory guideline range finally adopted by the Court at sentencing, including any applicable modifications for a

mandatory minimum sentence and potential variances, will not request a fine, and will recommend that the sentences for Counts 1 and 4 run concurrently with one another.

12. The Defendant waives all rights, whether asserted directly or by a representative, to request or to receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 522a.

13. The Defendant agrees to make a full and complete financial disclosure. The Defendant agrees to complete and sign a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. The Defendant will not encumber, transfer, or dispose of any monies, property, or assets under the Defendant's custody or control without written approval from the United States Attorney's Office. If the Defendant is incarcerated at any time in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving

the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

14. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court.

15. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

16. This document and the supplement contain the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

17. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

18. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

CARLTON S. SHIER, IV
UNITED STATES ATTORNEY

Date: 1/4/22    By: _____
Anthony J. Bracke
Assistant United States Attorney

Date: 1-4-22    _____
Thomas E. Powers
Defendant

Date: 1-4-22    _____
F. Dennis Alerding
Attorney for Defendant

8